IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

PATRICIA A. SORRELL NUTTER,

    Plaintiff,

V.                                          CIVIL ACTION NO. 3:05-0479

JO ANNE BARNHART,
Commissioner of Social Security,

    Defendant.

## **FINDINGS AND RECOMMENDATION**

In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her applications on May 8, 2002, alleging disability commencing May 6, 2002, as a consequence of "broken left foot, blind in left eye, diabetes, osteopenia." On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-four years of age and had obtained a high school education. Her past relevant employment experience consisted of work as a cook. In his decision, the administrative law judge determined that plaintiff suffers from "status-post left ankle and foot fracture with post-traumatic arthritis, insulin-dependent diabetes mellitus with diabetic retinopathy, and loss of vision in left eye," impairments he found severe. Though concluding that plaintiff was unable to perform her past work,[1] the administrative law judge determined that she had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.20 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff testified that she is disabled mainly due to ankle and foot pain and blindness in her left eye, the result of uncontrolled diabetes. Medical reports reflect a history of left ankle fracture in the fall of 2001 which required surgery for internal fixation. The ankle healed satisfactorily and plaintiff returned to work in the spring of 2002. She returned to her treating orthopedic surgeon, Dr. Iaquinto, shortly thereafter, reporting persistent left ankle pain. This physician wrote a letter at that time recommending a more sedentary job for plaintiff because her ankle pain was exacerbated by excessive standing and walking. He recommended she not be on her feet more than thirty percent of the workday. Although he reiterated this opinion in a July 11, 2002 note, Dr. Iaquinto reported this limitation was "currently temporary" until plaintiff reached

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

maximum medical improvement and had a functional capacity evaluation. Concluding she had made a "full functional recovery" of the fracture as of July 11, 2002, he ordered a functional capacity evaluation. The results of this testing indicated plaintiff could perform light level work. Though the administering physical therapist felt plaintiff needed some work on her balance, there is no indication of any limitation in standing or walking inconsistent with light level work.

While it was discovered in June 2003 that plaintiff had broken a bone in her left foot, she improved quickly and by July 22, 2003, her podiatrist concluded she could wear regular shoes. The record does not document further treatment for foot problems for nearly one year until plaintiff returned on July 9, 2004, to see another podiatrist complaining of bilateral ankle pain. Exam revealed pain with range of motion which was considered "severely" limited. X-rays were also interpreted as showing severe degenerative changes of both the left and right ankles. The podiatrist, Dr. Seth Stinehour, noted that plaintiff reported having been told that ankle fusion was the only thing that would eliminate her pain, and he indicated his agreement with this assessment. Plaintiff was not ready to have such surgery, however.

Dr. Stinehour provided treatment to plaintiff, including prescription of a brace which she reported provided "a lot" of relief. Following an appointment in the fall of 2004, she was to return on an as needed basis for cortisone injections; however, nothing further was submitted from this, or any other, physician, though the hearing was not held until mid-February of 2005.

Prior to the functional capacity evaluation in September 2002, a state agency medical advisor evaluated plaintiff's residual functional capacity in August of 2002, expressing the opinion

she could perform a limited range of light work.[3] While these assessments were submitted before plaintiff's foot fracture in June 2003, as noted, this fracture healed quickly and satisfactorily and there were no further problems for nearly one year. Despite plaintiff's complaints and the X-ray findings from July 2004, she reported, as noted, significant relief with use of an ankle brace. The administrative law judge subsequently found plaintiff could perform light level work requiring no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling; no exposure to dangerous machinery; and, no concentrated exposure to unprotected heights or temperature extremes. In addition, she needed work which did not require "bifocal" vision. The evidence relative to plaintiff's ankle problems clearly provides substantial support for these findings.

Plaintiff also has a history of insulin dependent diabetes for which she has been treated by Dr. Henry Driscoll, an endocrinologist, and by Dr. Sarah McCarty, a specialist in internal medicine. Prior to receiving an insulin pump in April of 2003, reports reflect significant problems trying to regulate her blood sugar levels. A June 11, 2002 report from Dr. Craig Morgan, an eye specialist, reflects a history of treatment for diabetic retinopathy in both eyes as well as a central retinal arterial occlusion in the left eye. When he last saw her on January 23, 2002, plaintiff's visual acuity was 20/40 in the right eye and 20/200 in the left, although Dr. Morgan was unsure why her vision was even this good in the left eye. There was no significant retinopathy at that time nor any other condition which required treatment. He opined that plaintiff could do anything she desired without causing any further problems to her eyes.

---

[3] A second state agency medical advisor evaluated plaintiff's residual functional capacity in October 2002 but found her work capability increased to a full range of medium level work.

Plaintiff was hospitalized for two days in July 2002 for hyperkalemia.[4] Dr. Driscoll noted on February 23, 2003, that plaintiff denied any episodes of hypoglycemia, and on June 4, 2003, approximately six weeks after receiving her insulin pump, she reported feeling well and having few episodes of increased blood sugar. She reported to Dr. McCarty the following month she was feeling much better. Plaintiff did experience an episode of diabetic ketoacidosis in February 2004 requiring another two-day hospitalization, and she was also treated in September of that year for endophthalmitis in the left eye.[5] There is no indication, however, that this condition caused any further work-related limitations beyond an inability to perform jobs requiring "bifocal" vision, as the administrative law judge found.[6]

While the treatment notes also show that plaintiff was treated for hypertension, diabetic nephropathy, diabetic gastroparesis, gastroesophageal reflux disease and osteopenia, the evidence clearly indicates that these conditions were relatively stable with medication and did not impose any further limitations on plaintiff's ability to work. The Court concludes, therefore, that the administrative law judge's findings as to plaintiff's residual functional capacity are well-supported by the substantial evidence of record.

Plaintiff alleged significant limitations on her activities due to ankle pain, fatigue and unpredictable blood sugar levels. The administrative law judge found plaintiff's testimony credible but determined her impairments were not as severe as alleged. Persuasive to him were the

---

[4] The presence of too much potassium in the blood. <u>Attorney's Dictionary of Medicine</u> H-234 (2006).

[5] An inflammation of the internal parts or structures of the eye, as the iris, lens, retina, etc. <u>Attorney's Dictionary of Medicine</u>, <u>supra</u> at E-109.

[6] This term appears to be a misnomer, however, it is apparent what the administrative law judge meant.

improvement in her diabetic condition since receiving her pump and the absence of significant treatment for diabetes or related conditions since that time, other than the brief hospitalization in February of 2004. She has consistently reported that she has not noticed signs of neuropathy. In terms of her ankle, she returned to weight-bearing status following both of her fractures and has remained able to ambulate independently ever since. As noted, her most recent complaints of ankle pain seem to have abated with use of a brace. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of her functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of light and sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

# RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to transmit a copy of the same to all counsel of record.

DATED: January 26, 2007

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE